UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| JACOBS ENGINEERING GROUP INC.<br>1999 Bryan Street<br>Dallas, TX, 75201-6823<br><br>BLUE CANOPY GROUP LLC<br>11091 Sunset Hills Road, Suite 777<br>Reston, VA 20190<br><br>                     Plaintiffs-Claimants,<br><br>          v.<br><br>CAPEFIRST FUNDING, LLC<br>1930 Isaac Newton Square, Suite 200<br>Reston, VA 20190<br><br>INVESTOR RECOVERY TRUST<br>CAPEFIRST ADVISORS, LLC, TRUSTEE<br>1930 Isaac Newton Sq., Suite 200<br>Reston, VA 20190<br><br>CAPEFIRST ADVISORS, LLC<br>1930 Isaac Newton Sq., Suite 200<br>Reston, VA 20190<br><br>WESTFIELDS HOLDINGS, LLC<br>1442 William Carr Lane<br>Centreville, VA 20120<br><br>TUCKER NONG & ASSOCIATES, PLLC<br>8133 Leesburg Pike, Suite 900<br>Vienna, VA 22182<br><br>ARES CAPITAL CORPORATION<br>7 St. Paul Street, Suite 820<br>Baltimore, MD 21202<br><br>UNITED STATES<br><br>and | Civ. No. 1:18-cv-1302-CMH/TCB<br><br>**COMPLAINT<br>FOR INTERPLEADER** |

1

|  |  |
|---|---|
| PARTIES UNKNOWN CLAIMING ANY RIGHT OR INTEREST IN THE PROPERTY THAT IS THE SUBJECT OF THIS ACTION, <br><br>　　　　　　Defendants. | ) ) ) ) ) ) ) ) |

Interpleader Plaintiffs-Claimants Jacobs Engineering Group Inc. ("Jacobs") and Blue Canopy Group LLC ("Blue Canopy"), by and through their attorneys, and for their Complaint for Interpleader and Declaratory Relief, allege as follows:

## INTRODUCTION

1. This Complaint seeks to resolve competing present and potential claims to a $1,933,500.00 sum (the "$1,933,500 Fund") held by Interpleader Plaintiff-Claimant Blue Canopy Group LLC and its ultimate corporate parent, Interpleader Plaintiff-Claimant Jacobs Engineering Group Inc.

2. Blue Canopy accepted, and continues to hold, the $1,933,500 Fund as payment for work Blue Canopy performed on what was widely understood to be a bona fide, classified federal government program in support of the United States intelligence community. At relevant time periods, this program went by the name "FirstNet," among others (the "FirstNet Program").

3. Blue Canopy, along with numerous other private contractors, legitimately and reasonably understood that the FirstNet Program was a highly secretive matter of national security, and that contractual payments for work on the program would accordingly be made from a "black account" serving to support classified or secret operations on behalf of the U.S. government.

4. Over a two-year period, Blue Canopy provided services to the FirstNet Program pursuant to a classified June 12, 2014 written agreement. In November 2015, Blue Canopy

received a payment of $1,933,500.00 – routed through the bank accounts of a Northern Virginia law firm, purportedly for secrecy reasons – for work that Blue Canopy performed under that contract.  Blue Canopy did not receive, and has not since received, payment for an additional $1,930,000 due to it for work performed on the FirstNet Program.

5.    Because they had not been informed in advance as to the government's method of payment, following receipt of the $1,933,500 Fund, Blue Canopy's management began inquiries with its bank into the provenance and application of the $1,933,500 Fund.  Shortly after Blue Canopy initiated those inquiries, Blue Canopy's prior counsel at Covington & Burling LLP received a series of telephone calls from individuals known to them as – and holding themselves out to be – federal officials involved in national security matters.  Those federal officials informed Covington & Burling that the $1,933,500 Fund represented a payment for Blue Canopy's 2014 work and certain 2015 work on the FirstNet Program.  Those officials further represented that the monies came from a classified government "black account" used to process payments for "black programs."  During the calls, those officials reprimanded Blue Canopy for inquiring into the source of funds.  As a result of the telephone call, Blue Canopy ceased its inquiries into the provenance of the $1,933,500 Fund.

6.    Approximately six months later, the United States Department of Justice ("DOJ") contacted Blue Canopy in connection with a criminal investigation of the FirstNet Program.  Although the DOJ investigation is ongoing and the details are unclear, Blue Canopy now understands from DOJ that at least some purported components of the FirstNet Program were likely part of a complex fraud scheme and, at the very least, certain activities under the program were unauthorized.  Blue Canopy also understands that to the extent there was fraudulent conduct, it is regarded as a victim of that fraud.

7. In October 2017 – nearly two years after the $1,933,500 Fund was transmitted to Blue Canopy – Interpleader Defendants Investor Recovery Trust (Capefirst Advisors, LLC, Trustee) and Capefirst Funding, LLC (collectively, "Capefirst") filed an action in the Circuit Court for Fairfax County, Virginia, Civil Case No. 2017-14160 (the "Fairfax Complaint"). The Fairfax Complaint asserts claims against Blue Canopy and Jacobs Engineering Group Inc. (which purchased Blue Canopy in 2017), along with two individual defendants, seeking disgorgement of the $1,933,500 Fund, in addition to other relief.

8. Capefirst has alleged that Interpleader Defendant Capefirst Advisors LLC was the source of the $1,933,500 Fund under an arrangement negotiated by Interpleader Defendant Westfields, "a privately-owned firm with knowledge of the [FirstNet] Program[]." Capefirst – pursuant to an agreement purportedly executed by Matthew Milstead (Westfields' principal) and a credentialed individual who represented himself to be a U.S. government contracting officer – allegedly provided the $1,933,500 Find in exchange for the promise of a later $2,255,380 payment by the U.S. government to Westfields. Capefirst maintains that the government never made that promised payment to Westfields.

9. Capefirst, in its own capacity and as the alleged assignee of Westfields, has alleged that Blue Canopy duped Westfields and that Blue Canopy has unlawfully accepted and retained the $1,933,500 Fund. Neither Westfields nor its principal Matthew Milstead is a party to the Fairfax litigation.

10. The Fairfax Complaint is one of several potential claims that Interpleader Plaintiffs-Claimants reasonably believe may be lodged against the $1,933,500 Fund that is the subject of this interpleader action. Interpleader Defendant Tucker Nong, PLLC, for example, is the entity that actually wired the $1,933,500 Fund to Blue Canopy; on information and belief

(and as alleged in the Fairfax Complaint), that law firm participated, either as a principal or on behalf of an undisclosed client, in the financing transaction involving the $1,933,500 Fund. Likewise, Interpleader Defendant Ares Capital Corporation, on information and belief (and as alleged in the Fairfax Complaint), was also involved in the financing transaction pertaining to the $1,933,500 Fund. Both of these entities may lodge claims for possession of some or all of $1,933,500 Fund in the future. Finally, as noted above, Blue Canopy's attorneys at Covington & Burling were informed that the ultimate source of the $1,933,500 Fund was a United States government "black account." If components of the FirstNet Program were fraudulent (or at a minimum, improperly authorized), the United States may have or claim a lien on the $1,933,500 Fund seeking return of those monies.

11. Accordingly, Interpleader Plaintiffs-Claimants bring the instant action to discharge all claims to the $1,933,500 Fund and prevent multiple litigations over that single fund by numerous potential claimants, including but not limited to Capefirst, Westfields, and their respective predecessors-in-interest, as well as other entities involved in the financing and payment of the $1,933,500 Fund to Blue Canopy, including but not limited to Tucker Nong & Associates, PLLC; Ares Capital Corporation (whose involvement is described in greater detail below); and the United States. Interpleader Plaintiffs-Claimants also assert claims to the $1,933,500 Fund as payment for additional work that Blue Canopy performed on the FirstNet Program under the classified June 12, 2014 written agreement.

## PARTIES

12. Interpleader Plaintiff-Claimant Jacobs Engineering Group Inc. is a publicly-traded corporation formed under the laws of Delaware. It is headquartered in Dallas, Texas.

13. Interpleader Plaintiff-Claimant Blue Canopy Group LLC is a limited liability company formed under the laws of Virginia, with its principal place of business in Virginia. Jacobs purchased Blue Canopy in August 2017.

14. Interpleader Defendant Capefirst Funding, LLC is a limited liability company formed under the laws of Virginia, with its principal place of business in Reston, Virginia. Capefirst purports to provide, among other things, commercial and business financing services, including financing secured by contracts awarded to, and invoices issued by, federal contractors.

15. Interpleader Defendant Investor Recovery Trust, Capefirst Advisors, LLC, Trustee, is an irrevocable grantor trust established by Capefirst Funding, LLC under the laws of Virginia, with its principal place of business in Reston, Virginia.

16. Interpleader Defendant Capefirst Advisors, LLC, is a limited liability company formed under the laws of Virginia, and the trustee of Interpleader Defendant Investor Recovery Trust, Capefirst Advisors, LLC, Trustee. Its principal place of business is in Reston, Virginia.

17. Interpleader Defendant Westfields Holdings, LLC, is a limited liability company formed under the laws of Virginia, with its principal place of business in Centreville, Virginia.

18. Interpleader Defendant Tucker Nong & Associates PLLC is a professional limited liability company formed under the laws of Virginia, with its principal place of business in Vienna, Virginia. During the relevant time period, it was known as Tucker & Associates PLLC (the "Tucker Firm").

19. Interpleader Defendant Ares Capital Corporation ("Ares") is a publicly traded corporation formed under the laws of Maryland, with its headquarters in New York, New York.

20. Interpleader Defendant United States, through its intelligence agencies, entered into a classified written agreement with Blue Canopy for the performance of work on the FirstNet Program and was therefore Blue Canopy's ultimate customer on the FirstNet Program.

21. The remaining Interpleader Defendants – "parties unknown claiming any right or interest in the property that is the subject of this action" – include, but are not limited to, the grantor(s) of Investor Recovery Trust, as well as any predecessors or successors in interest to Interpleader Defendants Capefirst Funding LLC, Investor Recovery Trust, Capefirst Advisors, LLC, Westfields, Tucker Nong & Associates PLLC, and Ares Capital Corporation.

## JURISDICTION AND VENUE

22. Jurisdiction is proper in this Court pursuant to the "minimal diversity" requirement of 28 U.S.C. § 1335. At least two adverse claimants who claim or may claim an entitlement to the $1,933,500 Fund are citizens of different States as defined in 28 U.S.C. § 1332. Interpleader Defendant Ares Capital Corporation is a citizen of Maryland and New York; the remaining private Interpleader Defendants are citizens of Virginia. In addition, all of the private Interpleader Defendants are citizens of different States than Interpleader Plaintiff-Claimant Jacobs Engineering Group, which also claims an interest in the $1,933,500 Fund. The property in controversy is worth $1,933,500.00.

23. An alternative basis for jurisdiction exists under Federal Rule of Civil Procedure 22 and 28 U.S.C. § 1331. Interpleader Plaintiffs-Claimants Jacobs Engineering Group and Blue Canopy claim an entitlement to the $1,933,500 Fund as a result of work performed for the U.S. government at the direction of federal government officials and pursuant to a written agreement with instrumentalities of the U.S. government. As such, their claims involve substantial issues of

federal procurement and contracting law including, *inter alia*, the Federal Acquisition Regulation, 49 C.F.R. Part 1 *et seq.*, and thus arise under Constitution and laws of the United States.

24. Jurisdiction is proper over the United States pursuant to 28 U.S.C. § 2410(a) because, on information and belief, this interpleader action involves real or personal property on which the United States has or claims a mortgage or other lien.

25. Venue is proper pursuant to 28 U.S.C. § 1391(b) because at least one Interpleader Defendant resides in the Eastern District of Virginia.

## STATEMENT OF INTERPLEADER ACTION

### Nature of the Property

26. As part of this interpleader action, Interpleader Plaintiffs-Claimants have deposited (or will deposit when so ordered by the Court) the $1,933,500 Fund into the registry of the Court pursuant to Local Civil Rule 67.

27. Prior to its deposit with the Clerk of Court, Blue Canopy accepted, and has held, the $1,933,500 Fund, which it reasonably believed to be a legitimate, bona fide payment to Blue Canopy for services rendered under a classified written agreement with the United States government dated June 12, 2014.

28. Interpleader Plaintiff-Claimant Jacobs Engineering Group, through a subsidiary, purchased Blue Canopy in August 2017 and thus has held indirectly the $1,933,500 Fund since that time.

**Competing Claims and Potential Claims Against the $1,933,500 Fund**

29. There are present and potential future disputes about the ownership of the $1,933,500 Fund.

30. Blue Canopy performed substantial work on the FirstNet Program pursuant to a classified June 12, 2014 written agreement with the United States, for which Blue Canopy is still owed $1,930,000.00 in addition to the $1,933,500 Fund amount. Jacobs and Blue Canopy claim an entitlement to the $1,933,500 Fund as incomplete payment for services duly rendered by Blue Canopy to the U.S. government.

31. Investor Recovery Trust (by its trustee Capefirst Advisors, LLC) alleges in the Fairfax Complaint that its beneficiaries "are investors who provided funds to grantor Capefirst for the sole purpose of such funds being advanced to Blue Canopy" in connection with the financing of invoices submitted to the United States government by Blue Canopy. Investor Recovery Trust claims that it is lawfully entitled to the $1,933,500 Fund, *inter alia*, based on claims of unjust enrichment, conversion, and fraud. Investor Recovery Trust asserts these claims on its own behalf and as a purported assignee of Westfields.

32. Capefirst Funding LLC alleges in the Fairfax Complaint that it is lawfully entitled to the $1,933,500 Fund, *inter alia*, based on claims of unjust enrichment, conversion, and fraud. Capefirst Funding LLC asserts these claims on its own behalf and as a purported assignee of Westfields.

33. Westfields allegedly contracted with the U.S. government to provide funding to Blue Canopy in exchange for a future U.S. government payment of $2,255,380.00, which allegedly was never paid and is allegedly thus still due and owing to Westfields. Westfields does not presently assert claims against the $1,933,500 Fund; rather, it has purportedly assigned some

(but not all) of its claims to Capefirst Funding LLC and Investor Recovery Trust. Notwithstanding that alleged and attempted assignment, Interpleader Plaintiffs-Claimants believe that certain claims purportedly assigned by Westfields are not assignable as a matter of law, and that certain likely claims by Westfields against the $1,933,500 Fund have not been assigned. Accordingly, Interpleader Plaintiff-Claimants reasonably anticipate that they will or could be subject to multiple litigations when Westfields ultimately asserts its own right or claim to these non-assignable and non-assigned claims.

34. Interpleader Plaintiffs-Claimants also face potential claims by the Tucker Firm, the entity that actually transferred the $1,933,500 Fund to the custody of Blue Canopy. The Tucker Firm transferred the $1,933,500 Fund to Blue Canopy by wire on or about November 6, 2015. According to the Fairfax Complaint, several months thereafter, in May 2016, "a principal of the Tucker Firm, Lawrence Tucker, . . . contacted Westfields and requested that a new services agreement with the Tucker firm be prepared under which the services that were provided to the U.S. Government under the [Westfields] Contract" – that is, payment of the $1,933,500 Fund to Blue Canopy – "were to be recast as having been provided to the Tucker Firm or a client thereof." In return, the Tucker Firm (not the U.S. government) would become "obligor for" the $2,255,380.00 payment allegedly due to Westfields. If this account of events turns out to be true – something not known to Interpleader Plaintiffs-Claimants at this time – then the Tucker Firm or an unknown client of that firm (not Capefirst, Westfields, or another claimant) would be the source of the $1,933,500 Fund, and Interpleader Plaintiffs-Claimants may reasonably anticipate claims by "the Tucker Firm or a client thereof."

35. Interpleader Defendant Ares Capital may also claim a potential interest in the $1,933,500 Fund, as Ares also may have provided financing for the payment to Blue Canopy.

10

On information and belief, and as alleged in the Fairfax Complaint, "Lawrence Tucker . . . informed Westfields and Capefirst that under this new invoicing arrangement, monies . . . were being provided by or through Ares Capital Corporation, a private investment firm said to have ties to the Central Intelligence Agency, with payment to be routed through the Tucker Firm's escrow account."

36. Finally, Interpleader Plaintiffs-Claimants reasonably anticipate that the United States government will or could assert a claim or lien against some or all of the $1,933,500 Fund. As discussed above, individuals who were known to Blue Canopy's prior counsel at Covington & Burling LLP as federal officials involved in national security matters, and who held themselves out as such, informed Covington & Burling that the $1,933,500 Fund represented a "black account" payment for Blue Canopy's 2014 work and certain 2015 work on the FirstNet Program. However, Jacobs and Blue Canopy now understand from DOJ that some activities under the FirstNet Program – it is unclear which – were likely fraudulent and/or improperly authorized. To the extent that these issues impact work performed by Blue Canopy under the FirstNet Program, and the U.S. government was the ultimate source of the $1,933,500 Fund, the U.S. government may assert a claim or lien on some or all of that Fund.

37. In sum, Interpleader Plaintiffs-Claimants fear that a disposition of a claim by any single Interpleader Defendant (including but not limited to the claims lodged in the Fairfax Complaint) without resolution of all claims to the $1,933,500 Fund in the Interpleader action would subject the Interpleader Plaintiffs-Claimants to multiple litigations and the risk of inconsistent judgments. Accordingly, Interpleader Plaintiffs-Claimants cannot determine, without exposing themselves to repeat litigation, whether Capefirst, the Investor Recovery Trust, Westfields, The Tucker Firm, Ares, the United States, or other unnamed predecessors-in-interest

of the Interpleader Defendants could later lay claim to the $1,933,500 Fund, or whether Jacobs and Blue Canopy are lawfully entitled to retain that property for services duly rendered to the U.S. government at the direction of government officials under the June 12, 2014 written agreement.

    WHEREFORE, Interpleader Plaintiffs-Claimants respectfully request judgment as follows:

    (a)    An Order permitting Interpleader Plaintiffs-Claimants to pay into the registry of this Court the $1,933,500 Fund;

    (b)    An Order discharging Interpleader Plaintiffs-Claimants from further liability with respect to the $1,933,500 Fund;

    (c)    An Order restraining and enjoining the Interpleader Defendants by Order and Injunction of this Court from instituting any action or proceeding in any state or United States court for the recovery of the Property or any part of it, and that such Order and Injunction specifically include the action currently pending in the Circuit Court for Fairfax County, *Investor Recovery Trust et al. v. Blue Canopy Group LLC*, Civil Case No. 2017-14160, pursuant to the Fairfax Complaint;

    (d)    An Order requiring the Interpleader Defendants to interplead and establish their rights – if any – to the $1,933,500 Fund;

    (e)    An Order entering judgment declaring that Interpleader Plaintiffs-Claimants are legally entitled to retain the $1,933,500 Fund as against any and all claims by Interpleader Defendants;

(f) An Order awarding Interpleader Plaintiffs-Claimants their costs and attorneys' fees; and

(g) An Order awarding Interpleader Plaintiffs-Claimants such other and further relief as this Court deems just, equitable, and proper.

Dated: October 18, 2018

Respectfully submitted,

*/s/ Thomas Shakow*
Thomas E. Shakow (Va. Bar No. 70291)
Paul Rauser (*pro hac vice* pending)
Kimberly Wehle (*pro hac vice* pending)
Serine Consolino (*pro hac vice* pending)
AEGIS LAW GROUP LLP
801 Pennsylvania Avenue, NW
Suite 740
Washington, D.C. 20004
(202) 737-3375
tshakow@aegislawgroup.com

*Counsel for Interpleader Plaintiffs-Claimants*