UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| JACOBS ENGINEERING GROUP INC.<br>1999 Bryan Street<br>Dallas, TX, 75201-6823<br><br>BLUE CANOPY GROUP LLC<br>11091 Sunset Hills Road, Suite 777<br>Reston, VA 20190<br><br>Plaintiffs-Claimants,<br><br>v.<br><br>CAPEFIRST FUNDING, LLC<br>1930 Isaac Newton Square, Suite 200<br>Reston, VA 20190<br><br>INVESTOR RECOVERY TRUST<br>CAPEFIRST ADVISORS, LLC, TRUSTEE<br>1930 Isaac Newton Sq., Suite 200<br>Reston, VA 20190<br><br>CAPEFIRST ADVISORS, LLC<br>1930 Isaac Newton Sq., Suite 200<br>Reston, VA 20190<br><br>WESTFIELDS HOLDINGS, LLC<br>1442 William Carr Lane<br>Centreville, VA 20120<br><br>TUCKER NONG & ASSOCIATES, PLLC<br>8133 Leesburg Pike, Suite 900<br>Vienna, VA 22182<br><br>ARES CAPITAL CORPORATION<br>7 St. Paul Street, Suite 820<br>Baltimore, MD 21202<br><br>UNITED STATES<br><br>and | Civ. No. 1:18-cv-1302 |

|  | ) |
|---|---|
| PARTIES UNKNOWN CLAIMING ANY | ) |
| RIGHT OR INTEREST IN THE PROPERTY | ) |
| THAT IS THE SUBJECT OF THIS ACTION, | ) |
|  | ) |
| Defendants. | ) |
|  | ) |

## MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT OF MOTION BY INTERPLEADER PLAINTIFFS-CLAIMANTS
## PURSUANT TO 28 U.S.C. § 2361 FOR AN INJUNCTION OF COMPETING
## PROCEEDINGS AFFECTING INTERPLEADER PROPERTY

Interpleader Plaintiffs-Claimants Blue Canopy Group LLC and its corporate parent Jacobs Engineering Group Inc. (collectively, "Blue Canopy") respectfully submit this memorandum of law in support of their motion for a stay of related proceedings pursuant to 28 U.S.C. § 2361 of the Federal Interpleader Act, which authorizes "a district court [to] enter its order restraining [all claimants] from instituting or prosecuting any proceeding in any State or United States court affecting the property, instrument, or obligation involved in the interpleader action until further order of the court."

Interpleader Plaintiffs-Claimants seek this relief so that, consistent with Congress' intent in enacting § 2361, this Court may conduct an orderly disposition of the interpleader property without the multiple litigations and "race to the courthouse" that might otherwise ensue if claimants were permitted to simultaneously pursue parallel claims to the single, limited interpleader fund at issue in this case.

## **BACKGROUND**

Plaintiffs-Claimants have filed a Complaint for Interpleader and Declaratory Relief pursuant to 28 U.S.C. § 1335 to resolve competing present and potential claims to a $1,933,500.00 sum (the "$1,933,500 Fund"). Blue Canopy accepted, and continues to hold, that $1,933,500 Fund as payment for work Blue Canopy performed on what was widely understood to be a bona fide, classified federal government program in support of the United States intelligence community. At relevant time periods, this program went by the name "FirstNet," among others (the "FirstNet Program"). Blue Canopy, along with numerous other private contractors, legitimately and reasonably understood that the FirstNet program was a highly secretive matter of national security, and that contractual payments for work on the program would accordingly be made from a "black account" serving to support classified or secret operations on behalf of the U.S. government.

In November 2015, Blue Canopy received a payment of $1,933,500.00 – routed through the bank accounts of a Northern Virginia law firm, purportedly for secrecy reasons – for work it performed under the FirstNet Program. Compl. ¶ 4. However, approximately six months later, the United States Department of Justice ("DOJ") contacted Blue Canopy in connection with a criminal investigation of the FirstNet Program. Compl. ¶ 6. Although the DOJ investigation is ongoing and the details are unclear, Blue Canopy now understands from DOJ that at least some purported components of the FirstNet Program were likely part of a complex fraud scheme and, at the very least, certain activities under the program were unauthorized. *Id.* Blue Canopy also understands that to the extent that there was fraudulent conduct, Blue Canopy is regarded as a victim of that fraud. *Id.*

Blue Canopy maintains that it is lawfully entitled to the $1,933,500 Fund as payment for its services, but believes that others may assert claims for those funds as well – indeed, one such claimant has already asserted a claim for those monies, and investigation by Blue Canopy suggests that other claimants, named as Interpleader Defendants in this action, will likely come forward to assert claims over that same, limited pot of money. Thus, in an excess of caution, Blue Canopy has paid the $1,933,500 Fund into the registry of this Court so that the Court may comprehensively resolve, in one action and without the need for repetitive, wasteful litigation or the potential inequities of a "race to the courthouse," the competing interests of all claimants to that interpleader property.

## ARGUMENT

I.   **Congress Gave This Court Broad Authority – Upon the Filing of an Interpleader Complaint – To Enjoin Any Actions Affecting the Interpleader Fund**

By its very nature, an interpleader action protects a stakeholder from multiple claims to a limited fund by providing a forum and procedure for adjudicating all competing interests to that fund. *See State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 534 (1967). "Developed over six hundred years ago by the common law courts of England," *Wells Fargo Bank, N.A. v. Eastham*, No. CV DKC 16-0386, 2016 WL 2625281, at *3 (D. Md. May 9, 2016), the purpose of interpleader is thus to prevent "vexatious and multiple litigation" and reduce the possibility of inconsistent determinations or an inequitable distribution of a limited fund. *Tashire*, 386 U.S. at 534.

To that end, the interpleader statute provides federal courts with distinct procedural tools to protect the court's jurisdiction and the efficacy of the interpleader, including the ability "to restrain prosecution of state court suits involving property involved in federal

4

interpleader actions." *O'Shea v. Littleton*, 414 U.S. 488, 512 (1974) (Douglas, J., dissenting). The Fourth Circuit has recognized that the issuance of a "permanent injunction is valid and well within the district court's power under 28 U.S.C. § 2361 and 28 U.S.C. § 2283." *Brooks Run Coal Co. v. Waggy*, No. 86-1514, 1986 WL 18586, at *2 (4th Cir. Aug. 29, 1986).

An injunction pursuant to § 2361 ensures that all competing claims over a specific amount of money are resolved in an orderly manner under the jurisdiction of a single federal court. "An injunction against overlapping lawsuits obviously is desirable to ensure the effectiveness of the interpleader remedy. It prevents a multiplicity of actions and reduces the possibility of inconsistent determinations or the inequitable distribution of the fund." 7 Charles Alan Wright *et al.*, FEDERAL PRACTICE AND PROCEDURE § 1717 (2001). In this respect, a § 2361 injunction serves the same purpose as the "automatic stay" of § 362 of the Bankruptcy Code. *See O'Shea*, 414 U.S. at 512 (noting that the federal interpleader statute is among "seven statutes . . . which the Court has recognized constitute 'express exceptions' to the policy of nonintervention in state proceedings enunciated by the anti-injunction statute") (Douglas, J., dissenting).

As Congress implicitly recognized in passing § 2361, the interpleader injunction prevents a "race to the courthouse" to claim the funds in advance of – and to the possible exclusion of – other potential claimants, producing multiple litigations and the potential for inconsistent judgments or unjust distribution of the limited interpleader funds. Indeed, "[w]ithout the option of interpleading funds, and faced with genuinely competing claims to a stake, the stakeholder is left with the unappealing prospect of either choosing one claimant over the other and facing action by the disappointed suitor or holding the stake and awaiting suit by both." *Wells Fargo Bank, N.A.*, 2016 WL 2625281, at *3.

Because of the unique purpose of interpleader, an application for an injunction pursuant to 28 U.S.C. § 2361 is expressly exempt from the standards and procedures normally applicable to injunctions under Fed. R. Civ. P. 65.[1] *See Great West Cas. Co. v. Fredrics*, No. 1:10-cv-267, 2010 WL 4818010, at *2 (W.D.N.C. Nov. 22, 2010) (noting that Rule 65 "excepts" the interpleader statute and that "Congress authorized restraining orders in interpleader actions pursuant to 28 U.S.C. § 2361"); *see also 3M Co. v. Christian Investments LLC*, No. 1:11CV627, 2011 WL 3678144, at *5 (E.D. Va. Aug. 19, 2011) ("[A]n interpleader action . . . has its own rules for preliminary injunctions"); *City Nat. Bank of Fairmont v. Fidelity Mut. Life Ins. Co.*, 206 F.2d 531, 533 (4th Cir. 1953) (noting that "[t]hat same day" that plaintiff filed an interpleader action under § 1335, the district court enjoined the defendant "from instituting or prosecuting any other suit or proceeding against the plaintiff . . . in any State Court or in any other Federal Court on account of the Policy of Insurance issued by the plaintiff") (quotation omitted). Moreover, "[c]ourts are . . . compelled to construe interpleader provisions liberally." *Fredrics*, 2010 WL 4818010, at *2 (citing 4 MOORE'S FEDERAL PRACTICE § 22.03[1][h] (Matthew Bender 3d ed. 2010)).

Thus, courts in this Circuit routinely enjoin both federal and state court proceedings affecting the interpleader property when a federal interpleader complaint is filed. *See, e.g., Am. United Life Ins. Co. v. Mays*, No. 2:17CV99, 2017 WL 3262251, at *4 (E.D. Va.

---

[1]     Specifically, Rule 65(e)(2) states that "[t]hese rules do not modify . . . 28 U.S.C. § 2361, which relates to preliminary injunctions in actions of interpleader or in the nature of interpleader."

July 31, 2017) (issuing interpleader injunction restraining interpleader defendants from instituting or prosecuting any proceeding in any state or federal court).[2]

## II.   An Injunction Should Issue To Allow an Orderly Resolution of Competing Claims to the $1,933,500 Fund

Consistent with the purpose of interpleader and Congress' broad grant of injunction authority in the Interpleader Act, injunctive relief is warranted in this case to "restrain[ all claimants] from instituting or prosecuting any proceeding in any State or United States court affecting the property, instrument, or obligation involved in the interpleader action until further order of the court." 28 U.S.C. § 2361.

Here, the $1,933,500 Fund reflects a payment Blue Canopy received for work duly performed under a classified U.S. government program that was widely believed to be a

---

[2]      *See also Life Ins. Co. of the Southwest v. Coleman*, No. 3:14-CV-799-JAG, 2015 WL 1469155, at *2 (E.D. Va. Mar. 30, 2015) (same); *Hunt Bldg. Co., Ltd. v. A. J. McDonald Contracting, Inc.*, No. 4:14CV18, 2015 WL 13439794, at *4 (E.D. Va. Mar. 2, 2015) (same); *Transamerica Life Ins. Co. v. Sallome*, No. 3:15cv624, 2015 WL 222184, at *2 (E.D. Va. Jan. 14, 2015) (same); *Minnesota Life Ins. Co. v. Webb*, No. 1:13-CV-01242 AJT, 2014 WL 1681688, at *6 (E.D. Va. Apr. 7, 2014), *report and recommendation adopted*, No. 1:13-CV-1242 AJT/IDD, 2014 WL 1686812 (E.D. Va. Apr. 28, 2014) (same); *Banner Life Ins. Co. v. Jones*, No. 2:11CV63, 2011 WL 4565352, at *8 (E.D. Va. Sept. 29, 2011) (same); *Minnesota Life Ins. Co. v. Rives*, No. 1:10CV1099 AJT/TRJ, 2011 WL 1085881, at *3 (E.D. Va. Mar. 18, 2011) (same); *Wells Fargo Bank, N.A.*, 2016 WL 2625281, at *4 (same); *Combined Ins. Co. of Am. v. Swift*, No. 5:13CV86, 2013 WL 5946378, at *4 (N.D. W.Va. Nov. 5, 2013) (same); *Hartford Life and Acc. Ins. Co. v. King*, No. 7:11-CV-411, 2013 WL 828190, at *5 (W.D. Va. Feb. 6, 2013), *report and recommendation adopted*, No. 7:11-CV-411, 2013 WL 837010 (W.D. Va. Mar. 6, 2013) (same); *Metro. Life Ins. Co. v. Davis*, No. CIV. JFM-10-2785, 2011 WL 2148714, at *6 (D. Md. May 31, 2011) (same); *Lincoln Nat. Life Ins. Co. v. Parker*, No. 8:10-2815-HMH, 2011 WL 497415, at *2 (D.S.C. Feb. 7, 2011) (same); *Genworth Life and Annuity Ins. Co. v. Huff*, No. 4:10CV00018, 2010 WL 2836168, at *3 (W.D. Va. July 20, 2010) (same); *Lincoln Nat. Life Ins. Co. v. Simpkins*, No. 2:08-1188, 2009 WL 2996603, at *4 (S.D. W.Va. Sept. 11, 2009) (same); *Fed. Ins. Co. v. Parnell*, No. 6:09CV00033, 2009 WL 2848667, at *4 (W.D. Va. Sept. 3, 2009) (same); *Genworth Life and Annuity Ins. Co. v. Harper*, No. 7:09-CV-00236, 2009 WL 1917090, at *3 (W.D. Va. June 30, 2009) (same).

bona fide, highly-secretive effort in support of the United States intelligence community.  In keeping with the classified nature of the program, Blue Canopy – like other contractors working on the program – understood that it would be paid from "black accounts" established to support classified or secret operations on behalf of the U.S. government.  To date, Blue Canopy does not know the provenance of the $1,933,500 Fund; the circumstances surrounding the transfer of the $1,933,500 Fund to Blue Canopy remain opaque and are the subject of an ongoing federal investigation.  Moreover, a number of the Interpleader Defendants in this case were purportedly or apparently involved in facilitating payments to and from the black account(s) associated with the monies in the $1,933,500 Fund, and others – including but not limited to the U.S. government – may ultimately assert claims for some or all of those payment funds.

Because of the ongoing federal investigation into the FirstNet Program and the classified nature of that program, Blue Canopy does not know, at this time, whether any pending or potential claimant has a viable claim to the $1,933,500 Fund.  Blue Canopy risks facing multiple lawsuits by parties lodging claims to the fund on a seriatim basis; indeed, one such suit, which omits several likely claimants, has already been filed. *See Investor Recovery Trust et al. v. Blue Canopy Group LLC*, Civil Case No. 2017-14160 (Va. Cir. Ct.) (asserting rights to Blue Canopy's $1,933,500.00 on the theory that the underlying federal program was fraudulent).  This is precisely the situation that Congress envisioned in authorizing district courts to issue threshold injunctions to halt all related proceedings pending disposition of a statutory interpleader claim. As one court in this Circuit explained, "***the only way to ensure that there will not be overlapping litigation*** is to have the interpleader court issue an injunction against other proceedings." *Fredrics*, 2010 WL 4818010, at *2 (emphasis added).

Section 2361 squarely affords the relief requested here. Because "the purpose behind the interpleader statute would be rendered futile if several courts could litigate the right to the stake at issue," *Fredrics*, 2010 WL 4818010, at *2 (citing MOORE'S at § 22.04[5][a]), Plaintiffs-Claimants respectfully request that the instant motion be granted.

Dated: October 18, 2018                    Respectfully submitted,

                                           */s/ Thomas Shakow*
                                           Thomas Shakow, Esq. (Va. Bar. No. 70291)
                                           Paul Rauser, Esq. (*pro hac vice* pending)
                                           Kimberly Wehle, Esq. (*pro hac vice* pending)
                                           Serine Consolino, Esq. (*pro hac vice* pending)
                                           AEGIS LAW GROUP LLP
                                           801 Pennsylvania Avenue, NW
                                           Suite 704
                                           Washington, D.C. 20004
                                           (202) 737-3375
                                           tshakow@aegislawgroup.com

                                           *Counsel for Interpleader Plaintiffs-Claimants*