```
                                                                    1

 1                  UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF VIRGINIA
 2                       ALEXANDRIA DIVISION

 3
     JACOBS ENGINEERING GROUP INC., )
 4   ET AL.                         )
                                    )
 5        VS.                       )  1:18-CV-1302  CMH/TCB
                                    )
 6                                  )  ALEXANDRIA, VIRGINIA
                                    )    OCTOBER 18, 2019
 7                                  )
     CAPEFIRST FUNDING, LLC, ET AL. )
 8   _____ )

 9

10

11

12

13  _____

14                    TRANSCRIPT OF HEARING
              BEFORE THE HONORABLE THERESA CARROLL BUCHANAN
15                  UNITED STATES MAGISTRATE JUDGE
                            FTR GOLD
16  _____

17

18

19

20

21

22

23

24  Proceedings reported by stenotype, transcript produced by

25  Julie A. Goodwin.


                                              Julie A. Goodwin, CSR, RPR
```

# APPEARANCES

FOR THE INTERPLEADER PLAINTIFFS-CLAIMANTS/COUNTER-DEFENDANTS:
   AEGIS LAW GROUP LLP
   By:  MR. THOMAS E. SHAKOW
        MR. PAUL RAUSER
   801 Pennsylvania Avenue, NW
   Suite 740
   Washington, DC  20004
   202.737.3375
   tshakow@aegislawgroup.com


FOR THE INTERPLEADER DEFENDANTS/COUNTER-PLAINTIFFS:
   SILVERMAN THOMPSON SLUTKIN & WHITE LLC
   By:  MR. STEVEN N. LEITESS
        MS. JODIE E. BUCHMAN
   201 North Charles Street
   Baltimore, Maryland  21201
   410.385.2225
   sleitess@mdattorney.com
   jbuchman@mdattorney.com


OFFICIAL U.S. COURT REPORTER:
   MS. JULIE A. GOODWIN, CSR, RPR
   United States District Court
   401 Courthouse Square
   Eighth Floor
   Alexandria, Virginia  22314
   512.689.7587

1  (OCTOBER 18, 2019, 10:04 A.M., FTR GOLD, OPEN COURT.)
2              COURTROOM DEPUTY:  *Jacobs Engineering Group Inc., et
3  al. versus Capefirst Funding, LLC, et al.*; Case 18-CV-1302.
4              Counsel, please note your appearance for the
5  record.
6              MR. LEITESS:  Good morning, Your Honor.
7              THE COURT:  Good morning.
8              MR. LEITESS:  My name is Steven Leitess, and I'm here
9  with my partner, Jodie Buchman.  I'm admitted *pro hac vice*.
10 She's my sponsoring counsel.  We represent Capefirst Funding,
11 LLC --
12             THE COURT:  Okay.
13             MR. LEITESS:  -- and Investor Recovery Trust.
14             THE COURT:  Okay.  Thank you.
15             MR. RAUSER:  Good morning, Your Honor.
16             THE COURT:  Good morning.
17             MR. RAUSER:  Paul Rauser representing Blue Canopy and
18 Jacobs Engineering.  With me is my co-counsel, Thomas Shakow.
19 We're with Aegis Law Group, LLP.
20             THE COURT:  Good morning.
21             MR. RAUSER:  Good morning, Your Honor.
22             THE COURT:  So what is the status?  What is going on
23 now?
24             MR. LEITESS:  The short answer, Your Honor, is the
25 status with respect to the issuance of where obtaining the

4

1  Touhy evidence hasn't changed.
2          THE COURT:  Has there been any response from the
3  Government as to when they're going to decide this?
4          MR. LEITESS:  They will not tell us the timing, but
5  they say that the criminal investigation is active and ongoing.
6          THE COURT:  Well, who is investigating this, the U.S.
7  Attorney's office in DC or here or where?
8          MR. LEITESS:  It -- it is the U.S. Attorney's office
9  here along with main justice, Your Honor.
10         THE COURT:  And they won't tell you anything?
11         MR. LEITESS:  They will not tell us anything with
12 respect to timing, scope, or when the witnesses and evidence
13 will be available and --
14         THE COURT:  Who's the AUSA who is in charge of this?
15         MR. LEITESS:  Forgive me, Your Honor.  It is the head
16 of the criminal -- head of the civil division.
17         THE COURT:  Lauren Wexler?
18         UNIDENTIFIED ATTORNEY:  Lauren Wexler, Your Honor.
19         MR. LEITESS:  Thank you, Your Honor.
20         THE COURT:  Let me take a brief recess.
21    (OFF THE RECORD, BRIEF RECESS TAKEN.)
22    (ON THE RECORD.)
23         THE COURT:  All right.  Lauren Wexler is out until
24 November 1, but I left -- I talked to Dennis Barghaan, who's
25 the first assistant, and he's going to look into it and get

5

1 back to me right away.
2          So what I think we should do -- I mean, did you
3 have a proposal other than extending it for another period of
4 time?
5          MR. LEITESS:  The short answer is no, although I
6 thought we might want to have a discussion about what discovery
7 could proceed in the absence of the Touhy evidence.
8          THE COURT:  Well, that's good.
9          MR. LEITESS:  It seems there's -- from our
10 perspective, there are not many depositions that we can or
11 would like to take without the benefit of these.  I mean, even
12 if you look at, you know, the basic -- the document that, you
13 know, is or is not the contract they had with the Government,
14 you know, we don't have it, they don't have it, and would like
15 to examine people on it.
16          THE COURT:  Do you have interrogatories or document
17 production otherwise that you had propounded?
18          MR. LEITESS:  And -- and the written discovery is
19 largely complete, Your Honor.
20          THE COURT:  Okay.  All right.
21          MR. LEITESS:  But for the Government documents and the
22 Government witnesses.
23          THE COURT:  Well, I think it's a good idea to do
24 whatever you can do and go ahead and do that right away.  I
25 think what we should do is let me have -- let Dennis get back

to me.  Probably be -- well, maybe it will be later today, but it could be, you know, next week, and set up a conference call with you-all when I hear the results of that.  And that will also give me a chance to think about it.

Judge Hilton is much more flexible than some of the other judges are in terms of extending time, but I'd probably still want to tell him what's going on with it as well.

So, are you-all available more or less next week in town?

UNIDENTIFIED ATTORNEY:  Absolutely.

THE COURT:  Okay.

MR. LEITESS:  There are a couple of other issues that I would like to address with Your Honor --

THE COURT:  All right.

MR. LEITESS:  -- but, yes, make myself available.

THE COURT:  I mean, we'll just do a conference call if you're going to be -- if you're not going to be on a cruise ship somewhere or something.

MR. LEITESS:  It would be nice, but I have no plans to.

THE COURT:  Or in trial.  Maybe I should say in trial.

Okay.  Well, I'll get back to you when I hear from him.

What were the other matters that you had?

MR. LEITESS:  Thank you, Your Honor.

1              It was -- I guess we were going to leave this stay
2    in effect until --
3              THE COURT:  Until I get back to you next week, yes.
4              MR. LEITESS:  All right.  Then I suppose --
5              THE COURT:  Well, I mean, only a stay in terms of
6    staying the case's deadlines, not in terms of staying the other
7    discovery that you can --
8              MR. LEITESS:  Great.
9              THE COURT:  -- do.
10             MR. LEITESS:  That's -- that's good.
11             THE COURT:  Right.
12             MR. LEITESS:  Thank you for that clarification.
13                Oh, sorry.
14             THE COURT:  The recorder won't pick you up as well.
15             MR. LEITESS:  Got it.  Something to hold on to - cold
16   medication.
17             The -- the other issue is that I was very pleased
18   this morning when Your Honor asked, is it Lauren Wexler, and
19   then promptly went off the bench to try and call.
20             I think if the Court's involvement to assist us --
21   I mean, we're trying to cooperate as much as we possibly can
22   with each other --
23             THE COURT:  Right.
24             MR. LEITESS:  -- and we have a good trust
25   relationship, and we've been working together on it.  And we're

1  hung up on this issue of the contract that resulted in my
2  client wiring the money to the attorney trust account, which
3  then went to their client.  And they're concerned not only with
4  that transaction, which was funded on November 5, 2015, but
5  well before that there were other transactions for which Blue
6  Canopy claims -- and I haven't yet seen the invoicing, that's
7  part of the discovery that we're working through -- that it is
8  owed about $4 million in connection with some related programs.
9           And I understand that using this discovery process
10 and then hopefully getting the documents from the Government
11 and access to the Touhy witnesses would assist them in finding
12 out what happened with the $4 million that they're owed by the
13 Government separately.
14          But the dispute that's in this courtroom this
15 morning is cabined to a very specific issue, and that is a
16 notification of award on an auto signed piece of apparently
17 Department of Defense letterhead, which I have here to show the
18 Court, if you're curious about it, and the authenticity of the
19 obligation allegedly undertaken by the Government.
20          I don't need and I don't care, except that I would
21 like to see my colleagues clients get their money, anything
22 about those earlier transactions.
23          If this one transaction was bogus, we're done here.
24 And we only need the answer to that question from the
25 Government.

1        So, in June of this year, I wrote to the Government
2   and I gave them three questions.  And if I may.
3        I wrote to Todd Ghee (phonetic) -- Todd G., who is
4   the assistant U.S. Attorney in the public integrity section
5   that's responsible for the investigation, which I understand is
6   ongoing and closer to the end than the beginning.  It's four
7   and a half years now.
8        I asked Mr. G., is the contract referenced in the
9   acknowledgement of award a valid government contract which upon
10  proof of performance is enforceable against the United States
11  for the face amount shown in the acknowledgement?
12       I'm not asking for any facts.  I'm asking for a
13  thumbs up or a thumbs down.  And if it's necessary for our
14  clients to engage counsel with security clearances to meet in
15  chambers with Your Honor or anybody else to get the answer to
16  that question, this litigation comes to an end.
17       THE COURT:  Okay.
18       MR. LEITESS:  Okay?
19       The second question --
20       THE COURT:  Now, is that also going through Lauren
21  Wexler or is that a different --
22       MR. LEITESS:  This is -- this -- I did not know of
23  Ms. Wexler's involvement at the time - I don't think I did - at
24  the time that I sent this letter to Mr. G., but I knew that he
25  and Heidi Gesch (phonetic) are actively working on the

1  investigation --

2          THE COURT:  And where are they?

3          MR. LEITESS:  They're in the public integrity section
4  I believe at main justice.

5          THE COURT:  Okay.

6          MR. LEITESS:  Yeah, they're -- they're U.S. Department
7  of Justice, Criminal Division, Public Integrity Section.
8  Unfortunate acronym.

9          THE COURT:  So when did you -- when did you send that?
10  You said in June?

11          MR. LEITESS:  June 18th.  The second --

12          THE COURT:  And you sent it directly to them, and
13  you've not asked Lauren Wexler about it?

14          MR. LEITESS:  And I -- well, I don't know if it went
15  to Lauren.  I mean, I have spoken with Lauren about this and
16  said, Here are my questions.

17          THE COURT:  So she's aware of that as well?

18          MR. LEITESS:  She is as well, but I think that they
19  believe I'm asking for more information than I'm asking for.  I
20  don't care for the purposes of this lawsuit what happened in
21  2012, '13, '14.  I only care about this one transaction when my
22  client's money is hung up.

23          The second question that I asked was, the funds
24  advanced to Blue Canopy by my client were provided in good
25  faith at having been represented to Capefirst that the money

1  was being advanced to Blue Canopy on behalf of the United
2  States.
3             Did the United States record or does the United
4  States otherwise deem Blue Canopy's receipt of my client's
5  funds as a set-off to any previous recurrent obligation owed to
6  Blue Canopy?
7             I did ask them to provide some detail if the answer
8  to that was yes.  But if the Government has given credit to
9  Blue Canopy for the -- as on its books said, all right, Blue
10 Canopy has been paid $2 million, then I suppose it means that
11 they owe us -- that the Government owes us the money.  But if
12 they didn't record that as a payment to Blue Canopy, then that
13 leaves us where we are today.
14            THE COURT:  Would you-all do me -- would you give me a
15 copy of that?  If you don't have a copy with you, just --
16            MR. LEITESS:  I will give you the copy I'm reading
17 from.
18            THE COURT:  Okay.  If you have that.  If it's an
19 extra.
20            MR. LEITESS:  Well, this -- it's on my devices.  I'll
21 just give you the hard copy.
22            THE COURT:  Okay.  Do you have a copy of your Touhy
23 request as well, or can you send it over today?
24            MR. SHAKOW:  We do, Your Honor.  I -- I attached those
25 to the --

1        THE COURT:  The original motion.

2        MR. SHAKOW:  -- original motion for stay, but I have a
3   copy of it.

4        THE COURT:  Wait.  I may have it here.  Hold on a
5   second.

6        MR. SHAKOW:  I have a hard copy as well, if you...

7        THE COURT:  I might have it.  It's one of the exhibits
8   to your original motion?

9        MR. SHAKOW:  It is, Your Honor.  Or the --

10       THE COURT:  Okay.

11       MR. SHAKOW:  -- the memorandum.  It's -- they're
12   exhibits to the memorandum.

13       THE COURT:  Right.

14            Okay.  I see the July 8th letter to Zach
15   Terwilliger.  And let's see.  Where is the -- okay.  I see
16   Lauren Wexler.  I don't know if the -- I don't see -- if you
17   have a copy there, that will be helpful.

18       MR. SHAKOW:  I do, Your Honor.

19       THE COURT:  I see your letter to -- I see the
20   correspondence, but I don't see the actual subpoenas.

21       MR. SHAKOW:  Your Honor, if I may.  Because we've made
22   Touhy requests before in connection with the Virginia state
23   court case, we had an ongoing relationship with Ms. Wexler on
24   this, and she indicated that we would not need to serve
25   subpoenas, just the Touhy letters, and she would handle them as

```
 1  an aggregate, as a package.
 2          THE COURT:  Okay.  I don't -- what I -- I guess what
 3  I'm getting at is I would like to be able to make sure when I
 4  talk to Mr. Barghaan that I've got everything covered in our
 5  conversation.  So if I've got your request and then --
 6          MR. SHAKOW:  Your Honor, I believe the July 8th letter
 7  attached as Exhibit A to the memorandum constitutes the record
 8  that's now with the U.S. Attorney's office on our most recent
 9  Touhy request.
10          THE COURT:  The only -- the only question I've got is
11  that it's only the letter.  And that letter refers to the
12  categories of documents and the subpoena and refers to the
13  declaration.
14          Do you have that?
15          MR. SHAKOW:  Your Honor, if -- if I may take one
16  moment, Your Honor.
17          THE COURT:  Okay.
18      (BRIEF PAUSE.)
19          MR. SHAKOW:  Your Honor, I don't believe I have them
20  here, but I can have a copy sent to chambers.
21          THE COURT:  If you would just send it over today, you
22  can e-mail it to my secretary or my law clerk or fax it.
23          Do we have a fax still, is that a thing?  I'm not
24  quite sure.  I know we don't have a machine anymore.  I don't
25  know whether there's actually -- fax them.
```

1           So anyway, if you would send that over this
2  afternoon when you get back, then I'll just make sure I've got
3  everything when I have this discussion.
4           MR. SHAKOW:  We will, Your Honor.
5           THE COURT:  And I don't know whether I'll be able to
6  get a better answer or not, but it's worth a shot.  Sometimes
7  they're more responsive to me.  Sometimes.  Sometimes.
8           MR. SHAKOW:  Well, certainly --
9           THE COURT:  At least they're nicer about it usually.
10          MR. SHAKOW:  There's nowhere to go but up at the
11 moment.
12          THE COURT:  Okay.
13          MR. SHAKOW:  Thank you, Your Honor.
14          THE COURT:  And then I'll let you know next week.
15 Okay?
16          MR. SHAKOW:  Thank you, Your Honor.
17          THE COURT:  Thank you.
18          MR. LEITESS:  Your Honor, there's just one more thing
19 I --
20          THE COURT:  Sure.
21          MR. LEITESS:  I want to make sure that the Court is
22 aware that I think the Government may be confused that I'm
23 asking about all of this stuff, going back to 2012 and 2013.
24 I'm only asking about the one item that's in dispute in this
25 litigation which is that notification of award and supposedly a

15

1  contract that backs it up that we've never seen, because the
2  Government has it, for this November funding.
3      THE COURT: Uh-huh.
4      MR. LEITESS: All the other stuff is, you know,
5  that -- and I don't need to know any facts. I just need the
6  Government -- we need the Government to give us a yea or nay
7  on, is this their obligation, and we can take it from there.
8  But all the rest of it is not before the Court.
9      THE COURT: Okay. We'll see. If there's any question
10 about it, then we can just do a conference call with them as
11 well.
12     MR. LEITESS: Great.
13     THE COURT: Okay? Thank you.
14     MR. LEITESS: Thank you.
15     MR. SHAKOW: Thank you, Your Honor.
16     THE LAW CLERK: All rise.
17         (PROCEEDINGS CONCLUDED AT 10:22 A.M.)
18                       -oOo-
19
20
21
22
23
24
25

Julie A. Goodwin, CSR, RPR
10/18/19

16

1  UNITED STATES DISTRICT COURT    )
2  EASTERN DISTRICT OF VIRGINIA    )
3
4            I, JULIE A. GOODWIN, Official Court Reporter for
5  the United States District Court, Eastern District of Virginia,
6  do hereby certify that the foregoing is a correct transcript
7  from the recorded proceedings of *FTR Gold*, in the above matter,
8  to the best of my ability.
9            I further certify that I am neither counsel for,
10 related to, nor employed by any of the parties to the action in
11 which this proceeding was taken, and further that I am not
12 financially nor otherwise interested in the outcome of the
13 action.
14           Certified to by me this 10TH day of DECEMBER, 2019.
15
16
17
18            ___/s/_____
              JULIE A. GOODWIN, RPR
19            Official U.S. Court Reporter
              401 Courthouse Square
20            Eighth Floor
              Alexandria, Virginia  22314
21
22
23
24
25

Julie A. Goodwin, CSR, RPR

10/18/19